



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2014 MAY -5 P 3: 20

CLERK'S OFFICE
AT BALTIMORE

BY_____

Seema Mittal
Assistant United States Attorney
Seema.Mittal@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4869
MAIN: 410-209-4800
FAX: 410-962-0717

April 10, 2014

Mr. Thomas Maronick, Esq.
The Law Offices of Thomas Maronick, Jr., LLC
201 N. Charles Street, Suite 2000
Baltimore, MD 21201

      Re:   *United States v. Randy De La Cruz*, Crim. No. WDQ-13-0419

Dear Mr. Maronick:

      This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by **April 15, 2014**, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

    1.   The Defendant agrees to plead guilty to Count One of the Indictment now pending against him, which charges him with conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine hydrochloride, a Schedule II controlled substance, in violation of 21 U.S.C. § 846. The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offense

    2.   The elements of Count One, to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

    a.   At or about the time charged in the Indictment, in the District of Maryland, the Defendant knowingly, intentionally and willfully agreed with one or more persons

1

to distribute, or possess with the intent to distribute, 5 kilograms or more of cocaine hydrochloride;

b. That participation by the Defendant was knowing and voluntary, that is not by accident or mistake.

## Penalties

3. The maximum sentence provided by statute for the count of conviction is as follows: imprisonment for life, a $10 million fine, and a term of supervised release of at least five years. **There is also a mandatory minimum of ten years' imprisonment.**

4. In addition, the Defendant must pay $100 as a special assessment for each count of conviction, pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. The Court may also order the Defendant to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664. If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise.

5. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

6. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

   a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that the presumption could be overcome only by proof beyond a reasonable doubt.

c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statements.

g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on his immigration status. The Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

7.  The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

8.  This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A, which this Office would prove beyond a reasonable doubt.

9.  This Office and the Defendant understand, agree and stipulate to the following applicable sentencing guidelines factors. The parties agree and stipulate that the quantity of marijuana involved in the offense places the Defendant at an offense level 34, pursuant to U.S.S.G. § 2D1.1(c)(4) and 1B1.2 to account for at least 15 kilograms of cocaine, but less than 50 kilograms of cocaine. **Pursuant to statute, a mandatory minimum of ten years applies.**

10.  This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose any adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

Therefore, this Office and the Defendant agree that the adjusted base offense level is **31**.

11.  The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

12.  This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute, except as follows: this Office will not object to a two-level variance based on the pending Sentencing Commission's proposal to the U.S. Sentencing Guidelines to

4

reduce all drug base offense levels and the Defendant agrees not to seek a further two-level reduction pursuant to 18 U.S.C. § 3582(c) in the event the two-level reduction is adopted and made retroactive by the Sentencing Commission. The parties will be free to raise those facts which inform the application of the 18 U.S.C. § 3553(a) factors.

13.     The defendant may meet the criteria under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2(1)-(5), and if so, the offense level would be decreased by 2 levels pursuant to U.S.S.G. § 2D1.1(b)(16). If the Defendant qualifies, the Government will not object.

### Obligations of the United States Attorney's Office

14.     This Office reserves the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct which this Office deems relevant to sentencing, including the conduct that is the subject of any counts of the Indictment that this Office has agreed to dismiss at sentencing. This Office will be free to recommend any sentence within the applicable guidelines range. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

### Waiver of Appeal

15.     In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

   a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

   b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any sentence above the advisory guidelines range resulting from an adjusted offense level of 31; and (ii) this Office reserves the right to appeal any sentence below the advisory guidelines range resulting from an adjusted offense level of 31.

   c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

15. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

16. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## **Entire Agreement**

17.     This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

                Very truly yours,

                Rod J. Rosenstein
                United States Attorney

By: _[signature]_
Christopher J. Romano
Seema Mittal
Assistant United States Attorneys

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

4/29/2014
Date

Randy De La Cruz

I am Mr. De La Cruz's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

4/29/2014
Date

Thomas Maronick, Esq.

8

## ATTACHMENT A

## STIPULATION OF FACTS

The undersigned parties stipulate and agree that if this case had proceeded to trial, the Government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.

On March 9, 2010, Trooper First Class (TFC) Gussoni of the Maryland State Police (MSP) was on routine patrol north bound on Interstate 95 in Cecil County, Maryland. While on routine patrol, TFC Gussoni observed a 2010 Dodge Avenger bearing Massachusetts registration 177FR4 driving northbound. TFC Gussoni observed the vehicle make an unsafe lane change and driving in excess of the posted speed limit. TFC Gussoni initiated a traffic stop of the vehicle, with the vehicle eventually stopping at northbound I-95 at mile marker 100.8 in Cecil County, Maryland. TFC Gussoni made initial contact with the driver and sole occupant of the vehicle, who was subsequently identified as Jonathan Alfredo MELENDEZ. Based on MELENDEZ's nervous behavior and the other criminal indicators observed by TFC Gussoni, he requested a narcotics detector K-9 to come to his location. TFC McCurdy and a K-9 arrived at the scene. An external scan of the vehicle was conducted by the K9 with a positive indication on the vehicle for the presence of narcotics odors. MSP troopers then conducted a search of the vehicle. Inside the vehicle's trunk, TFC Gussoni located a blue duffle bag which was found to contain 13 kilogram sized "bricks" that field tested positive as cocaine. MELENDEZ was placed under arrest and transported back to MSP JFK barracks.

Law enforcement agents from the Immigration and Customs Enforcement (ICE) determined through travel and phone records that MELENDEZ had picked up the cocaine in Ft. Lauderdale, Florida, from the Defendant—Randy De La CRUZ—for transport to New York City. The investigation also revealed that CRUZ engaged in this manner of cocaine transport from Florida to New York on more than one occasion.

The Government was prepared to offer expert testimony that 13 kilograms of cocaine are worth in excess of $390,000 on the "street," indicating that the amount of cocaine was far in excess of the amount intended for personal use, and in fact would indicate an intention to distribute.

SO STIPULATED:

_____
Christopher J. Romano
Seema Mittal
Assistant United States Attorneys

_____
Randy De La Cruz
Defendant

_____
Thomas Maronick, Esq.
Counsel for Defendant