IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|                          |   |                               |
|--------------------------|---|-------------------------------|
| UNITED STATES OF AMERICA, | * |                               |
| Plaintiff,               | * |                               |
|                          |   |                               |
| v.                       | * | CRIMINAL NO.:  WDQ-13-0419   |
|                          | * |                               |
| LINCOLN NORMANDO MOQUETE, |   |                               |
| Defendant.               | * |                               |
|                          | * |                               |

*   *   *   *   *   *   *   *   *   *   *   *   *

MEMORANDUM OPINION

Lincoln Moquete is charged with conspiracy to distribute
and possess with intent to distribute five kilograms or more of
cocaine.  ECF No. 26.  Pending is the government's appeal of
Magistrate Judge Stephanie A. Gallagher's December 17, 2014
Order setting conditions of release.  A hearing was held on
December 18, 2014.  For the following reasons, Judge Gallagher's
Order setting conditions of release was affirmed.

I.   Background

A.   Facts

In March 2010, an alleged co-conspirator of the defendant
was stopped by police officers on I-95 in Maryland.  A canine
alerted to the presence of narcotics.  Officers found 13
kilograms of cocaine in the car.  The cocaine was packaged into
bricks and placed in bags.  Moquete's fingerprints were found on

the packages.  The government alleges that Moquete arranged for the cocaine to be brought into the United States from the Dominican Republic; from Florida, the cocaine was transported to New York for distribution.

Moquete grew up in the Dominican Republic but is now a U.S. citizen living in Florida.  Moquete has lived in the United States for 26 years.  He and his wife have been married for 24 years, and have three children who are all U.S. citizens living in the United States.[1]  Moquete has family living in Florida, New Jersey, and Rhode Island.  Moquete owns a family home[2] in Florida.  Moquete's sole criminal history involves a 1998 vehicle title fraud charge that was resolved through a diversion program.  Pretrial Services Report ("PSR") at 1.

Moquete has held two jobs for about the past ten years.  In addition to working for an air-conditioning business, Moquete is a "scout" or "agent" for young baseball players in the Dominican Republic; he helps bring them to the United States to play in the minor--and, occasionally, in the major--leagues.  According to Moquete, working with young athletes accounts for his

---

[1] Moquete also has two children from other relationships; one lives in Florida, and one lives in the Dominican Republic, where Moquete also has a sibling.  Pretrial Services Report ("PSR") at 4.

[2] The home has a market value of about $130,000; $90,000 remains owing on the mortgage.  PSR at 4.

2

frequent trips to the Dominican Republic.  From 2010 to his November 19, 2014 arrest, Moquete visited the Dominican Republic about 45-50 times; 16 of those visits occurred in 2014.

B.   Procedural History

On August 19, 2014, a federal grand jury indicted Moquete for conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846, and for possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(2).[3]  ECF No. 26.  On November 19, 2014, Moquete was arrested.  ECF No. 35.  That same day, Moquete was detained by consent.  ECF No. 36.  On December 17, 2014, Judge Gallagher issued an Order setting conditions of release, but stayed the Order pending the government's appeal.[4] On December 18, 2014, the Court held a hearing on the government's appeal.

II.  Analysis

A.   Standard of Review

Magistrate Judges in the District of Maryland "are specifically designated . . . to perform such . . . duties as are not inconsistent with the Constitution and laws of the

---

[3] The government alleges that--from June 2009 to March 2010-- Moquete, and two co-conspirators, transported cocaine from the Dominican Republic to Florida, and then to New York.  If convicted, Moquete's sentence carries a minimum ten-year penalty, and a maximum of life in prison.

[4] Pretrial Services in New York and Maryland also recommended conditions of release.  PSR at 2.

United States," including the "[i]ssuance of orders concerning release or detention of defendants . . . pursuant to 18 U.S.C. § 3141 et seq., and Fed. R. Crim. P. 32.1, 40 and 46." Local Rule 301.6(j) (D. Md. 2014). When a defendant is released, the government "may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release." 18 U.S.C. § 3145(a)(1)(2012). The district court reviews the magistrate judge's pretrial detention order *de novo*. *United States v. Clark*, 865 F.3d 1433, 1436 (4th Cir. 1989).

B.   The Government's Appeal

The government seeks Moquete's pretrial detention under 18 U.S.C. § 3142(f)(1)(2012), which permits detention when the defendant is charged with "an offense for which the maximum sentence is life imprisonment or death," or "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.)." The government asserts that detention is necessary because Moquete is a danger to the community, and a flight risk. The government relied on Moquete's ties to the Dominican Republic, which is geographically close to the United States, reachable by boat, and may be entered without a passport.

Under 18 U.S.C. § 3142(e), there is a rebuttable presumption "that no condition or combination of conditions will

4

reasonably assure the appearance of [Moquete] as required and the safety of the community" because Moquete has been indicted for an offense for "which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.) . . . ." 18 U.S.C. § 3142(e)(3); *see also United States v. Williams*, 753 F.2d 329, 332 (4th Cir. 1985); *United States v. Marcantoni*, No. RWT 10-CR-777-15, 2012 WL 612494, at *1 (D. Md. Feb. 23, 2012).

The rebuttable presumption shifts to the defendant the burden of producing "some evidence"; "however, the mere production of evidence does not completely rebut the presumption." *United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992); *United States v. Jessup*, 757 F.2d 378, 381 (1st Cir. 1985). "The burden of production is not a heavy one." *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986).

To rebut the presumption, Moquete offered to post bonds forfeiting his Florida properties, including his family's home. Moquete has strong family ties to the United States, where he has lived for 26 years. Moquete's former employer has offered to re-hire him, and he has no relevant criminal history. Moquete has produced sufficient evidence to rebut the presumption. *See Dominguez*, 783 F.2d at 706-07 (presumption rebutted when defendant in narcotics trafficking case was a Cuban immigrant who had lived in the United States for five

years, had no criminal record, was employed as a mechanic, and had family in Florida and Nevada); *United States v. O'Brien*, 895 F.2d 810, 816-17 (1st Cir. 1990)(presumption rebutted when defendant had electronic monitoring and posted home as surety).[5]

Once rebutted, the presumption "operate[s] as one factor to be considered by the court in determining whether the defendant must be detained." *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985); *O'Brien*, 895 F.2d at 815.  In determining whether there are appropriate conditions or a combination of conditions of release, the Court must consider: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  18 U.S.C. § 3142(g).[6]

---

[5] *Compare Portes*, 786 F.2d at 765 (presumption not rebutted when defendant had a job and immigration papers, and lived with his girlfriend and their two children); *Rueben*, 974 F.2d at 586-87 (presumption not rebutted when defendant offered evidence of family ties, which was "hardly more than a reflection of the drug conspiracy itself," and house, which "was not compelling as a tie to the community when its loss through forfeiture is a possibility because of its use in drug trafficking," and employment, which was "meaningless as an indicator of future appearances before the court when it is directly connected to drug trafficking").

[6] The government bears the burden of proving, by a preponderance of the evidence, that "no condition or combination of conditions will reasonably assure the appearance of the person as required," or, by clear and convincing evidence, that "no

1.   Nature and Circumstances of the Offense

Moquete is charged with conspiracy to distribute, and possession with intent to distribute, five kilograms of more of cocaine.  ECF No. 26.  According to the government, the conspiracy may have involved more than 50 kilograms of cocaine. However, the indictment alleges no criminal activity since 2010. ECF No. 26.

2.   Weight of the Evidence

The government has evidence of Moquete's fingerprints on the bricks of cocaine; thus, its case is strong.

3.   History and Characteristics of the Person

As noted, Moquete often travels to the Dominican Republic, and has family there.  However, Moquete's wife--to whom he has been married 24 years--and four of his children, live in the

---

condition or combination of conditions will reasonably assure . . . the safety of any other person and the community."   18 U.S.C. §§ 3142(e),(f); *United States v. Stewart*, 19 F. App'x 46, 48-49 (4th Cir. 2001) (unpublished) (*citing United States v. Medina*, 775 F.2d 1398, 1402 (11th Cir. 1985) for the proposition that the clear and convincing evidence standard applies only to the determination that "no condition or combination of conditions will reasonably assure the safety of any other person and the community"); *United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986)("The United States Courts of Appeals for several other circuits have decided that the government's burden in demonstrating risk of flight is the preponderance of the evidence standard. . . . We assume that Congress acted deliberately in setting forth the burden for a danger to the community determination while remaining silent as to the burden for a risk of flight inquiry.").

United States.  If Moquete flees, his wife and children will be without a home in which to live.

> 4. Nature and Seriousness of the Danger to Any Person or the Community

Dangerousness under § 3142(e), which is relevant to § 3142(g)(4), considers the "safety of any other person or the community." *United States v. King*, 849 F.2d 485, 487 n.2 (11th Cir. 1988) (*quoting* S. Rep. No. 98-225, 98th Cong., 2d Sess. (1984) U.S. Code Cong. & Admin. News 3182, 3195-96).  Further,

> [t]he reference to safety of any other person is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or witness, is of concern, while the language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community.

*Id.*  Congress intended "that the concern about safety be given a broader construction than merely danger of harm involving physical violence." *Id.*

Here, there is no indication that Moquete is violent; thus, the danger inquiry must focus on whether Moquete is likely to engage in criminal activity.  The government has not alleged that Moquete has engaged in criminal activity since March 2010. Accordingly, the government has not met its burden of proving that Moquete is a danger to the community.

Taken together, the government has not met its burden of showing that "*no* condition or combination of conditions will

8

reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(emphasis added). Accordingly, the Court affirmed Judge Gallagher's Order setting conditions of release.

III. Conclusion

For the reasons stated above, the Court affirmed the conditions of release set by Judge Gallagher.


_____December 19, 2014_____          _____/s/_____
Date                                 William D. Quarles, Jr.
                                     United States District Judge